[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED MAY 17, 1996
This is the third and, it is hoped, final memorandum of decision in this ad valorem tax appeal. On October 18, 1995, I filed a decision ordering the Board of Tax Review to reduce an assessment against Sears ("Sears I"). Later, on April 9, 1996, I filed a second decision awarding Sears interest pursuant to Conn. Gen. Stat. § 12-117a ("Sears II" [17 CONN. L. RPTR. No. 1, 32 (July 22, 1996)]). The proposed orders submitted by the parties following Sears II revealed some uncertainty as to just how SearsII ought to be applied. The parties have now filed additional briefs and further arguments have been heard. The questions raised by the parties will be answered in turn.
(1) When does the right to interest under § 12-117a
commence? This problem can be illustrated by the following example. Suppose that Sears' 1990 taxes are due on July 1, 1990. Sears, erring on the side of caution, actually pays those taxes in full on June 15, 1990. Much later, on October 18, 1995, the Superior Court files its decision in Sears I ordering the assessment reduced. Does the right to interest begin on the date of payment, the due date, or the date of the court's decision? The Town argues for the date of the court decision and uses the due date as a backup argument. Sears argues for the date of payment. CT Page 4031-K
The answer to this question is reasonably apparent from the statutory text. Conn. Gen. Stat. § 12-117a provides that "the applicant shall be reimbursed by the town or city for any overpayment of taxes, together with interest and costs." The key phrase, for present purposes, is "any overpayment of taxes." The "overpayment" occurs on the date of payment. From that moment on, the Town has the use of the overpaid money and Sears does not. It has long been recognized that one of the functions of prejudgment interest is to compensate the plaintiff for the loss of use of its money. See Scribner v. O'Brien, 169 Conn. 389, 405,363 A.2d 160 (1975). Under these circumstances, considerations both of fairness and of fidelity to the statutory text require the interest clock to begin ticking on the date of payment.
(2) When does the right to interest terminate? An example can once again illustrate the problem. Sears I was filed on October 18, 1995. The bulk of the overpaid taxes (not including interest) was repaid on January 4, 1996. On which of these dates does the right to interest end? The Town argues for the former date, and Sears, at the hearing, argued for the latter. (Note that if the Town were correct in both arguments (1) and (2), the right to interest would begin and end on the same date, and no interest would be payable at all.) The answer to this question is reasonably evident as well. Until the money is actually repaid, the Town has the use of that money, and Sears does not. It would be grossly unfair to Sears not to compensate it for the loss of use of this money.
The Town raises a technical argument that, since judgment entered on October 18, 1995, the interest awarded for any period after that date could not be considered prejudgment interest. It turns out, however, that this is not so. For reasons explained at length in Sears II, the judgment in Sears I must now be modified, and a new judgment must enter. Conn. Gen. Stat. § 12-117a
provides that "[u]pon motion" the court "shall . . . enter judgment in favor of [the] applicant and against [the] city or town for the whole amount of [the] overpayment, together with interest and costs." Under these circumstances, all of the interest awarded in the judgment about to be entered will be prejudgment interest.
For these reasons, the interest clock stops ticking on the date the money is repaid. CT Page 4031-L
(3) A somewhat narrower question has been raised concerning Sears' second and final installment payment of 1995. Sears I, as mentioned, was filed on October 18, 1995. The Town, however, did not send Sears a revised tax bill until December 26, 1995. The installment in question was paid between these two dates — on November 29, 1995. The amount of this payment was based on the then-existing assessment that Sears I ordered reduced. Sears, in short, paid too much and did so at a time when it was arguably not obliged to do so. (More than twenty days had expired sinceSears I, and no appeal had been filed, so the judgment was, or at least seemed to be, final.) Is Sears entitled to interest on this overpayment? The answer, I conclude, is in the affirmative.
The controlling principle here, as with respect to questions (1) and (2) discussed earlier, is that the Town had the use of the overpaid tax money and Sears did not. Although, as just mentioned, Sears was arguably not obliged to make this overpayment, the payment can hardly be described as gratuitous.Sears I ordered the assessor and the Board of Tax Review to correct the assessment against Sears, but this had not been done by November 29, 1995. Sears cannot be faulted for paying prior to the due date, since penalties would have attached had the payment arrived too late. See Conn. Gen. Stat. § 12-146. This payment, just like the other payments in question in this case, was an overpayment of taxes. It follows both from the text of § 12-117a and from the controlling principle just discussed that interest must be paid on this overpayment.
At the hearing, the parties agreed that, if the questions addressed in this opinion were answered in the way that they have now been answered, Sears would be entitled to prejudgment interest totalling $27,795.77. The judgment of October 18, 1995, is modified accordingly. In addition to the relief ordered inSears I, judgment shall enter in favor of the plaintiff and against the defendant in the amount of $27,795.77.
Blue, J.